## *FITZGERALD v. CALDWELL'S executors.

### Interest on judgment.

A judgment *nisi* was made absolute by an agreement, which stipulated that proceedings should be stayed, until the trial of certain foreign attachments, which had been laid, before the commencement of the suit, upon the funds in question : *Held*, that interest should be allowed on the judgment, but only from the time of the settlement of the principle involved in those attachments, by the trial of one of them.

THE original cause being remitted to the supreme court, upon the decision of the high court of errors and appeals,(*a*) this *scire facias* was brought to enforce the judgment against Caldwell's executors, returnable to September term 1798 ; and issue was therein joined upon the plea of " payment."

To maintain the plea, the defendant's counsel recapitulated the facts set forth in the report of *Fitzgerald* v. *Caldwell*, 2 Dall. 215 ; and contended, that, while the attachments were depending, Caldwell was not liable for interest ; that as soon as the original question had been decided, upon the trial of one of the attachments (in January 1793), favorably to the claim of the present plaintiff, Caldwell, at his own peril, paid the principal sum, due at the time the note was given to Fitzgerald ;(*b*) that no question of interest was decided by the high court of errors and appeals ; and that the judgment of that court is not a bar to the inquiry, in the present suit, whether anything is due, either for principal or interest.

For the *plaintiff*, it was urged, that by the agreement of the parties, the judgment *nisi* rendered on the report of the referees, in January 1791, was made absolute, with a stay of proceedings, until one of the attachments should be tried ; that this judgment, being for a sum certain, to wit, 5009*l.* 5*s.* 1*d.*, carried interest, of course, unless the terms of the agreement, or the operation of law, in cases of attachment, affected the right (1 Dall. Laws, 13) ; that in point of morality, as well as law, Caldwell, who had long detained, and advantageously employed, the money of another man, was bound to make a reasonable compensation for the use; that the decision of the supreme court, releasing Caldwell from the payment of interest, was the very foundation of the writ of error; and that the high court of errors and appeals *(whose sentence could now be revised, modified, or annulled) had not only affirmed the judgment rendered in January 1791, for the fixed sum of 5009*l.* 5*s.* 1*d.*, but had expressly reversed the order to discharge Caldwell, on payment of the principal sum.

---

(*a*) See Addis. 119.

(*b*) The principal sum paid was the amount due in April 1782; not the amount reported to be due by the referees (5009*l.* 5*s.* 1*d.*) and for which the judgment was rendered absolute, as of January 1791. The claim of the plaintiff, on the *scire facias*, was, therefore, founded upon the following calculation:

| | |
|---|---|
| Report of referees in January 1791.. ...................... | £ 5009 5 1 |
| Two years, interest, until payment, in January 1793,........ | 601 0 0 |
| | 5610 5 1 |
| Deduct the amount paid in January 1793................... | 3250 0 0 |
| | 2360 5 1 |
| Interest on the balance, until payment,..................... | |

Fitzgerald v. Caldwell.

SHIPPEN, Chief Justice.—We have neither the power, nor the inclination to impair the judgment of the high court of errors and appeals, by asserting a contrary opinion, in point of law; nor by admitting evidence to undermine its authority with the jury. The judgment of January 1791, with all its legal incidents, can only now be affected, by proof of actual payment and satisfaction. As to the principal sum for which the judgment is affirmed (5009l. 5s. 1d.), there must be no dispute; and we can only now consider that part of the defendant's argument, which insists, that, at least, upon the amount of the judgment, no interest ought to be allowed.

An act of the general assembly has declared, "that lawful interest shall be allowed to the creditor, for the sum or value he obtained judgment for, from the time the said judgment was obtained, until the time of sale, or until satisfaction be made." (1 Dall. Laws, 13.) Interest is, therefore, generally speaking, a legal incident of every judgment: but it is contended, that the present case ought to be excepted from the rule, because an immediate payment was not contemplated by the parties themselves; and because the judgment was made absolute, on the express condition, that it should await the trial of certain foreign attachments.

The agreement on which the judgment was made absolute, is recognised in the decision of the high court of errors and appeals, "according to its terms." The genuine meaning of its terms can only be ascertained, by considering what was the real subject in dispute under the attachments. In the attachment that was tried in January 1793, the dispute appeared to be simply, whether the evidence of Moore's interest in the debt, due from Caldwell to Vance, Caldwell & Vance, amounted to an assignment, legal or equitable.(a) The meaning of the agreement, therefore, must have been, to stay proceedings on the judgment, until that subject was investigated. Now, the subject was completely investigated, on the trial to which I allude; and the jury determined, that the debt did not remain subject to attachments, as a debt still due to Vance, Caldwell & Vance; but had been previously appropriated and assigned to Moore & Johnson. It is true, that the decision of the high court of errors and appeals recognises the agreement generally; and that the agreement, in its own general terms, embraces a trial of all the attachments: but if the first attachment could not prevail, it is improbable, that any subsequent attachment would succeed; and I repeat, that in the *spirit of the agreement, a discussion and decision of the principle was alone contemplated.                    [*253

In this view of the case, the only point to exercise the discretion of the jury, will be (not whether any interest shall be allowed upon the judgment, but) from what period the interest shall begin to run. The judgment being made absolute by the agreement, a reasonable time should, perhaps, be allowed for a trial, as contemplated by the terms of the agreement; but when the trial in January 1793, had fixed the right of Moore & Johnson to the debt, as assignees of Vance, Caldwell & Vance; and when Caldwell himself had acquiesced in the verdict, by paying what he thought due, without demanding an indemnity, the court cannot perceive any legal or equitable ground upon which the right of interest should be longer suspended.

---

(a) See this case cited, 6 Binn. 355.

Upon the whole, we think, that interest ought not to be allowed, upon the sum fixed by the judgment of January 1791, until the decision in January 1793 ; but that the interest ought to run from that period. Although Caldwell himself asked no indemnity, on the payment which he made, we shall think it proper, in aid of the executors, to direct an indemnity against the attachments to be given, before the amount of the verdict, on this occasion, is paid.

Verdict for the plaintiff.(a)

*E. Tilghman, Lewis* and *Dallas,* for the plaintiff. *Ingersoll* and *McKean,* for the defendants.

---

(a) The indemnity was given to the satisfaction of the judges, and the executors paid the amount of the verdict into court. Thus terminated, in 1802, a suit commenced, in fact, twenty years before, in 1782!

